UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BARRY WILSON, JR.,

        Plaintiff,

                                Case Number 10-13378
v.                               Honorable Thomas L. Ludington

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____ /

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS,
ADOPTING JUDGE MAJZOUB'S REPORT AND RECOMMENDATION,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE**

Magistrate Judge Mona Majzoub issued a report and recommendation (ECF No. 17) on July 15, 2011, recommending that the Court deny Plaintiff Barry Wilson, Jr.'s motion for summary judgment (ECF No. 13), grant Defendant Commissioner of Social Security's motion for summary judgment (ECF No. 16), and dismiss Plaintiff's complaint (ECF No. 1) with prejudice.

Any party may serve and file written objections to a report and recommendation "[w]ithin fourteen days after being served with a copy" of the report. 28 U.S.C. § 636(b)(1). In this case, however, the Court granted Plaintiff and Defendant an extension of time to object and respond. ECF Nos. 19, 24. Plaintiff timely filed objections on August 4, 2011. ECF No. 20. Defendant timely responded on September 2. ECF No. 25.

The district court "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The Court is not obligated to further review

the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

As an initial matter, the Court notes that Plaintiff's "objections," in addition to particularized objections to Judge Majzoub's report and recommendation, intersperse reassertions of arguments made in Plaintiff's motion for summary judgment. *See, e.g.*, Pl.'s Objections 17 ("Plaintiff also submitted, in Plaintiff's Motion for Summary Judgment, that the opinion of Dr. V. Gordon should have been given great weight, as that doctor documented Plaintiff having significant limitations . . . ." ). Moreover, most of Plaintiff's objections focus on errors allegedly made by Administrative Law Judge Patricia Hartman (ALJ), not Judge Majzoub. Nevertheless, Plaintiff is entitled to "fresh consideration" of those portions of the record which are relevant to his objections. 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3070.2 (2d ed. 1997 & supp. 2010).

After considering Plaintiff's objections, the Court agrees with Judge Majzoub's conclusion that ALJ's determination was supported by "substantial evidence." 42 U.S.C. § 405(g). Accordingly, Plaintiff's complaint will be dismissed with prejudice.

# I.

The Commissioner of Social Security determines whether a claimant is disabled in accordance with a five-step process. 20 C.F.R. § 404.1520(a)(4)(i)–(v). A claim is allowed when it is demonstrated that: (1) the claimant is not engaged in "substantial gainful employment"; (2) the claimant suffers from a severe impairment which has lasted or is expected to last for twelve continuous months; (3) the impairment meets or is equal to one of the enumerated impairments; (4) ; the claimant does not retain the "residual functional capacity" to

perform his "past relevant work"; and (5) the claimant is unable to perform any other gainful employment in light of the claimant's "residual functional capacity, age, education, and work experience."   20 C.F.R. § 416.920(a)(4)(i)–(v).   "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled."   *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)).   "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]."   *Id.*

The Court reviews the ALJ's decision to determine whether the "factual findings . . . are supported by substantial evidence."   *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990) (citing 28 U.S.C. § 405(g)).   Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   A district court does not resolve conflicts of evidence or issues of credibility.   *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).   If ALJ's decision is supported by substantial evidence, it must be affirmed, even if substantial evidence supports the opposite conclusion.   *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II.

Plaintiff's initial application for disability benefits alleged that he had become disabled and unable to work on September 19, 2002, due to "severe back pain," "nerve damage," "numbness in left leg," and "depression."   R. at 138.

At the time of his injury, Plaintiff was thirty-four years old, 5'10," and weighed about two hundred pounds.   R. at 31, 423.   His formal academic education had ended in the ninth

-3-

grade. *Id*. at 144. He had, however, completed a carpenter's apprentice program seven years after leaving school. *Id*. at 145. While working as a carpenter in September 2002, Plaintiff injured his back. *Id*. at 138.

In February 2003, an MRI revealed a herniated disk in Plaintiff's lower back. R. at 230. At L4/5 Plaintiff had a "large disc herniation . . . extending to the left and down along the lateral recess posterior to the L5 vertebral body." *Id*. In March 2003, Dr. E. Malcolm Field operated on the disk, performing a partial L4/5 hemi-laminectomy procedure. *Id*. at 169. In a follow-up report in May 2003, Dr. Field observed that Plaintiff "seems to be really doing fairly well," but recommended against immediately returning to heavy construction work. *Id*. at 202. A course of physical therapy followed. *Id*. at 254-64. In August 2003, Dr. Field again saw Plaintiff, observed that he "seems to be getting along quite well," but again recommended that Plaintiff not yet return to his former work activity. *Id*. at 201. In October 2003, seven months after the surgery, Dr. Field saw Plaintiff once more; on this visit, Dr. Field concluded that Plaintiff could "cautiously" return to work. *Id*. at 200.

The following month, Dr. Victor Gordon examined Plaintiff. R. at 243–48. Diagnosing him with "left L5 radiculopathy," Dr. Gordon recommended Plaintiff "avoid activities requiring him to lift or carry in excess of five to ten pounds." *Id*. at 247, 248. After this appointment with Dr. Gordon in November 2003, the record discloses no medical examinations for more than two years. *See* Pl.'s Objections 3.

In 2006, Plaintiff again sought medical advice and was examined by Dr. Timur Baruti, who referred Plaintiff to Dr. Umesh Verma, a neurologist. R. at 240. Dr. Verma saw Plaintiff on March 15, 2006, and noted that he had "[n]ormal bulk, tone, stance, gait, and strength." *Id*. at

-4-

241.  She concluded his symptoms — low back pain and left leg numbness — were likely secondary to lumbosacral radiculopathy.  *Id*. at 240.  Dr. Verma instructed Plaintiff "to get in touch with the surgeon who operated upon him in 2003."  *Id*. at 242.  Two days later, Dr. Don Jones examined Plaintiff and also diagnosed him with radiculopathy.  *Id*. at 372.

On March 29, 2006, Plaintiff filed his disability report.  R at 138.  Later that summer, Dr. Baruti ordered x-rays of Plaintiff's spine, which revealed no fractures, dislocations, or herniations.  *Id*. at 346.  Radiographs of Plaintiff's hip were taken in October 2006; they were also normal.  *Id*. at 342.

Around this time, Plaintiff was diagnosed with carpal tunnel syndrome in his left arm.  R. at 345.  In December 2006, an orthopedic surgeon, Dr. Michael McDermott, examined Plaintiff, finding that he had a full range of motion in his hands, no evidence of atrophy, and his overall grip strength was five on a five point scale.  *Id*. at 331–32.

In March 2007, the Commissioner referred Plaintiff to Dr. Thomas Horner for a psychological evaluation.  R. at 305.  Making general observations, Dr. Horner noted: (1) "posture: normal"; (2) "gait: normal"; (3) "speed: normal"; (4) "attentiveness: normal."  *Id*. at 307.  Plaintiff reported, the doctor's notes reflect, that Plaintiff "does not do housework, as he can't bend well. He is not lift [sic] more than twenty pounds."  *Id*.  Dr. Horner diagnosed Plaintiff with "adjustment disorder, health stressors, and financial stressors," summarizing his evaluation of Plaintiff's condition as: "Depression in relation to pain and limitations of physical functioning, also in relation to financial stressors."  *Id*. at 312.

Dr. Horner also ran a battery of cognitive tests to evaluate Plaintiff's mental ability to do work related activities. R. at 313–14.  The doctor concluded that Plaintiff has no impairment in

understanding, remembering, and carrying out simple instructions or making judgments on simple work-related decisions, but a "mild" impairment in understanding, remembering, and carrying out complex instructions or making judgments on complex work-related decisions. *Id*. at 313. Dr. Horner further reported that Plaintiff had no other significant limitations on his mental ability to do work-related activities. *Id*. at 313–14.

Dr. Jones saw Plaintiff again in June 2007 and concluded that overall he was "doing well." R. at 328. In October 2007; an MRI of Plaintiff's lumbar spine was taken; it showed degenerative disk disease and a disk herniation at L4/5, resulting in some L5 nerve root impingement. *Id*. at 373–74.

On December 5, 2007, Plaintiff was examined by Dr. Raghu Singh. R. at 427–31. Dr. Singh observed that straight leg raising was positive on the left side at 30 degrees and on the right side at 40 degrees. *Id*. at 430. Plaintiff exhibited diminished sensation for touch and pain on the left side at the L5 dermatome. *Id*. Dr. Singh recommended, inter alia, physical therapy, an epidural cortisone injection for the pain, and a weight reduction program. *Id*. Soon thereafter, Plaintiff began therapy at the Foote Hospital Pain Clinic. *Id*. at 401.

Dr. Michael Sheth saw Plaintiff in January 2008. R. at 384. Dr. Sheth's physical examination of Plaintiff showed "palpitation of the back does reproduce some pain." *Id*. Dr. Sheth's assessment was: (1) "Post laminectomy syndrome," (2) "Herniated disc with impingement of the left L5 neural foramen," (3) "Lumbar facet arthropathy," (4) "Sacroiliac joint dysfunction," (5) "Obesity," and (6) "Hypertension." *Id*.

Also in January 2008, Dr. Richard Enter saw Plaintiff and observed he was "well oriented, in good contact with reality and his thought processes, logic and associations were all

-6-

intact." R. at 440. Plaintiff reported "his pain is fairly constant, currently at an intensity level of 6 and ranging from a 6 to 9." *Id.* Dr. Enter diagnosed Plaintiff as experiencing "mild to moderate depression." *Id.*

Plaintiff met with Dr. Sheth again in February and March 2008. R. at 380–83. Dr. Sheth administered lower back injections, and Plaintiff reported some pain relief. *Id.* at 380. Dr. Sheth observed that "[p]alpitation of the back does reproduce some pain but minimal." *Id.*

In June 2008, Dr. Jones examined Plaintiff again and completed a "physical capacities evaluation." R. at 378. Dr. Jones concluded that in an eight hour workday Plaintiff: (1) could sit, stand, and walk, but for no more than fifteen minutes at a time; (2) could "occasionally" lift or carry up to five pounds, but could "never" lift or carry more than five pounds; (3) could use both hands for repetitive actions such as "fine manipulation," but could not use either hand for "simple grasping" or "pushing [and] pulling arm controls"; (4) could not use either foot for repetitive pushing and pulling of leg controls; (5) could bend and reach "occasionally," but could "never" crawl or climb; and could never engage in activities involving "unprotected heights," "being around moving machinery," or "exposure to marked changes in temperature and humidity." *Id.* Dr. Jones' evaluation did not, however, contain any objective medical evidence explaining the basis for his conclusions. *Id.* Instead, the conclusions were simply recorded. *Id.*

After Plaintiff's application for disability benefits was initially denied, he timely filed a request for a hearing, which was held on October 1, 2008. R. at 13. At the hearing, Plaintiff testified that on a pain scale of one to ten (with ten being the most painful), his average pain was an eight. *Id.* at 35–36. He testified that he could walk, stand, or sit for no more than "five or ten minutes" at a time. *Id.* at 37. A vocational expert, Sandra Steele, also testified at the hearing.

*See id.* at 47–53.  She was asked to consider a hypothetical person who, inter alia, was limited to simple, unskilled work that did not involve maintaining intense concentration, needed to be able to sit hourly for at least five minutes; could not climb ladders, ropes or scaffolds; could only occasionally use stairs, kneel, crouch, crawl, bend, or twist; could only occasionally push or pull with his upper extremities; was restricted from using foot controls; and could not be exposed to extreme temperatures, dangerous machinery, vibrating tools, or unprotected heights.  *Id.* at 48–49.  Based on these characteristics, the vocational expert testified, and Plaintiff's vocational profile, relative age, education, and work history, he could perform a number of jobs in the regional and national economy.  *Id.* at 49.  These jobs included, inter alia, assembler, inspector, sorter, and cashier.  *Id.* at 49–51.

By a written decision dated October 21, 2008, the ALJ denied Plaintiff's application for social security benefits, concluding that he was not disabled within the meaning of the Social Security Act.  R. at 23.  Specifically, ALJ found that Plaintiff "has the following severe combination of impairments: [1] degenerative disc disease; [2] L5 radiculopathy, status post laminectomy; [3] left carpal tunnel syndrome; [4] obesity; [5] adjustment disorder."  *Id.* at 15.  After reviewing Plaintiff's symptoms, the ALJ further found that "[Plaintiff's] medically determinable impediments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment."  *Id.* at 20.  Thus, the ALJ determined, Plaintiff "does not have an impairment or combination of impairments that meets or medically equals sections 1.04, 12.04, or any other listed impairment in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.* at 18.  The ALJ

-8-

further determined that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he requires an option to stand hourly for 5–10 minutes and a cane to ambulate over 50 feet; he cannot use ladders, ropes or scaffolds; he can only occasionally kneel, crouch, crawl, bend, twist, or use stairs; could only occasionally push or pull with his upper extremities; [etc.]." *Id*. The ALJ explained that in reaching this conclusion, she was rejecting the physical capacities assessment of Dr. Jones, one of the several physicians who treated Plaintiff, because not only was the doctor's opinion unsupported by objective medical evidence, it was "contraindicated by other substantial evidence in the record," *id*. at 21, including the observations and opinions of five other treating physicians — Drs. Field, Verma, Baruti, McDermott, Horner, and Singh. *See id*. at 16–17 (detailing doctors' observations and opinions). The ALJ concluded: "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that [Plaintiff] can perform." *Id*. at 22.

Judge Majzoub, in her report and recommendation, reported that the ALJ's decision was supported by "substantial evidence" and recommended that Plaintiff's complaint be dismissed. Plaintiff timely filed eight specific objections. For the reasons that follow, the Court overrules Plaintiff's objections, approves Judge Majzoub's report and recommendation, and dismisses Plaintiff's complaint because the ALJ's determination was supported by "substantial evidence." 42 U.S.C. § 405(g).

### III.

Plaintiff first objects that Judge Majzoub reports that "the ALJ's decision was consistent with the specific limitations imposed by examining physicians," but Judge Majzoub does not

pincite where in the record these limitations are discussed. Pl.'s Objections 9 (citing R&R 6). Plaintiff argues: "As noted in Plaintiff's Motion for Summary Judgment, the only opinions [consistent with the ALJ's decision] were those of the non-examining, nonconsulting physicians who opined in the record without actually seeing, speaking with and/or examining the patient." *Id*.

Plaintiff is correct that the physicians discussed at pages six and seven of the report and recommendation did not impose "specific limitations" on Plaintiff's activities; however, his objection is unpersuasive. Dr. Field, for example, examined Plaintiff several times between March and October 2003 — and in October 2003 concluded that Plaintiff could "cautiously" return to his former work activity. R. at 200. No further doctors' examinations are recorded until 2006. In March 2006, Dr. Verma examined Plaintiff and observed, inter alia, that he had "[n]ormal bulk, tone, stance, gait, and strength." R. at 241, *cited in* R&R 6. Dr. Horner saw Plaintiff in March 2007 and, inter alia, observed: (1) "posture: normal"; (2) "gait: normal"; (3) "speed: normal"; (4) "attentiveness: normal." *Id*. at 307. During this examination, Plaintiff told Dr. Horner that Plaintiff could "not lift more than twenty pounds." *Id*. Dr. Jones saw Plaintiff in June 2007 and concluded that overall he was "doing well." *Id*. at 328. Dr. Sheth examined Plaintiff in March 2008 and observed, inter alia, that "[p]alpitation of the back does reproduce some pain but minimal." *Id*. at 380. Collectively, the first-hand accounts of these five examining physicians provides sufficient relevant, first-hand evidence as a reasonable mind might accept as adequate to support the ALJ's conclusion that while Plaintiff had some physical limitations, he would be able to perform sedentary work.

-10-

In contrast, while Dr. Jones imposed a number of sweeping limitations on Plaintiff's ability to work — such as "never" being able to lift or carry more than five pounds — Dr. Jones' evaluation did not contain any objective medical evidence explaining the basis for his conclusions. *See id.* at 378 (indeed, Dr. Jones' conclusion was in some tension not only with the other objective evidence in the record, but also with Plaintiff's own statement to Dr. Horner the year before). Plaintiff's first objection is unpersuasive.

Plaintiff next objects that Judge Majzoub "references a consultative neurological examination by Dr. Umesh Verma in March 2006 for the proposition that the doctor 'did not observe any neurological deficits.' This is a red herring. Plaintiff's problems are orthopedic in nature." Pl.'s Objections 9. Plaintiff further objects that "the Magistrate Judge failed to mention that Dr. Verma's evaluation assessed the following: 'Back pain and left leg numbness.' " *Id*. at 10 (quoting R. at 10).

Plaintiff is correct that there is indeed evidence in the extensive record before the Court of back pain and numbness. R. at 138. Producing some evidence of back pain and numbness, however, is not sufficient to remand the case or reverse the ALJ's decision. Rather, Plaintiff must show that the ALJ's decision was not supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether a claimant is disabled, the ALJ should "consider all [a claimant's] symptoms, including pain, and the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). "Objective medical evidence," in turn,

> is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about

-11-

> the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.

20 C.F.R. § 404.1529(a).  Contrary to Plaintiff's contentions, Dr. Verma's clinical observations are not "red herrings" — they are relevant, objective medical evidence.  Dr. Verma examined Plaintiff on March 15, 2006, and observed that he had "[n]ormal bulk, tone, stance, gait, and strength."   R. at 241.   The ALJ and Judge Majzoub properly considered Dr. Verma's examination.

Plaintiff's third objection is that Judge Majzoub "partially" quotes from Dr. Verma's evaluation — noting that Plaintiff "told the neurologist that his back and leg pain had resolved after the surgery" — but does not include that Plaintiff also told Dr. Verma that from time to time he has "shooting pains from his hip down to his outer shin" and "the numbness has still persisted."  Pl.'s Objections 10 (quoting R. at 240).

As discussed above, Plaintiff is correct that Dr. Verma's evaluation contains some evidence supporting his claim.  That, however, is not the question before the Court.  The relevant question is whether the record contains sufficient evidence to support the ALJ's decision.  42 U.S.C. § 405(g).  In making her determination, it was not necessary for the ALJ to expressly enumerate every piece of evidence which either supports or undermines Plaintiff's claim.  Likewise, Judge Majzoub was not required to recount every detail contained in the 442 page record.  Plaintiff's objection to the contrary is not persuasive.

Plaintiff next objects that Judge Majzoub references the evaluation of Dr. Singh, but then cites pages in the record which contain the notes of Dr. Sheth and the Foote Hospital Pain Clinic.  Pl.'s Objections 10.   Plaintiff correctly cites the record; however, he does not demonstrate

-12-

reversible error.  The ALJ's decision makes plain that she considered Dr. Sheth and the Foote Hospital Pain Clinic's evidence.  On March 5, 2008, Dr. Sheth diagnosed Plaintiff with: (1) "Post laminectomy syndrome," (2) "Herniated disc with impingement of the left L5 neural foramen," (3) "Lumbar facet arthropathy," (4) "Sacroiliac joint dysfunction," (5) "Obesity," and (6) "Hypertension."  *Id*. at 11 (quoting R. at 380).  The ALJ's decision recognized Plaintiff "has the following severe combination of impairments: degenerative disc disease; L5 radiculopathy, status post laminectomy; left carpal tunnel syndrome; obesity; adjustment disorder."  R. at 15. Moreover, the ALJ incorporated these limitations in her residual functional capacity determination.  *See id*. at 18.  Likewise, in the records of the Foote Hospital Pain Clinic during February 2008, Plaintiff's pain was recorded between five and seven on a ten point scale.  Pl.'s Objections 11.  Around this time, however, Dr. Sheth also examined Plaintiff and observed that "[p]alpitation of the back does reproduce some pain but minimal."  R. at 380.   The ALJ concluded that "[Plaintiff's] medically determinable impediments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment."  *Id*. at 20.  In sum, the record contains evidence supporting Plaintiff's claim; however, it also contains substantial evidence supporting the ALJ's determination.  Plaintiff's objection to the contrary is not persuasive.

Plaintiff's fifth objection is that Judge Majzoub incorrectly asserted that Plaintiff was "discharged from physical therapy . . . when he failed to appear at scheduled appointments." Pl.'s Objections 13 (quoting R&R 7).  Plaintiff is correct that the record reflects that he informed his physical therapists that he would no longer be attending sessions because he was "unable to

tolerate increased pain from riding in the car." *Id*. (quoting R. at 408).  Plaintiff does not

suggest, however, that this should alter — much less vitiate — the substantive conclusions

reached by the ALJ.  It is simply noted here to complete the review of Plaintiff's objections.

Plaintiff's next objects that the ALJ should not have considered the opinion of Dr. Issa, a

state agency physician, because she is a non-examining, non-treating physician.  Pl.'s Objections

13.  Plaintiff's objection is unpersuasive.  As detailed above in the discussion of Plaintiff's first

objection, the record contains conflicting evidence from Plaintiff's treating physicians as to

exactly how his ailments affected him and what limitations he had.  *Id*. Under the circumstances,

the ALJ could properly rely on the testimony of Dr. Issa in order to make sense of the record.

*See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001).

Plaintiff's seventh objection regards use of the reports of Dr. Horner and Dr. Enter.  Pl.'s

Objections 14–15.  Plaintiff writes: "The Magistrate Judge . . . mentions two physicians, Drs.

Thomas Horner and Richard Enter, indicating that they each respectively stated that 'plaintiff

was in good contact with reality, and that his thought process, logic, and associations were intact'

. . . . The Magistrate's opinion above is wrong on many levels, but most importantly relative to

[Plaintiff's] exertional [sic] limitations." *Id*. at 14.  Plaintiff's objection is not well-taken.

The ALJ properly considered both examining physicians' opinions in determining

Plaintiff's mental abilities to do work-related activities.  Dr. Horner, for example, evaluated

Plaintiff's mental ability and reported, inter alia, that he has no impairment in understanding,

remembering, and carrying out simple instructions or making judgments on simple work-related

decisions. R. at 313.  Significantly, unlike Dr. Jones' evaluation regarding Plaintiff's limitations

(which was not accompanied by objective medical evidence demonstrating the basis for the

conclusions), Dr. Horner's conclusions were accompanied by the results of a battery of cognitive tests administered to Plaintiff.  *See id*. at 310–11.  Likewise, Dr. Richard Enter examined Plaintiff and observed that he was "well oriented, in good contract with reality and his thought processes, logic and associations were all intact."  *Id*. at 440.  The ALJ properly factored the observations of Dr. Horner and Dr. Enter into her assessment of what types of employment Plaintiff was capable of performing.

Plaintiff's final objection repeats his first objection — he reiterates that Judge Majzoub should not have concluded "that the ALJ's decision was consistent with the specific limitations imposed by treating and examining physicians."  Pl.'s Objections 15 (internal quotation marks omitted) (quoting R&R at 8).  He writes: "While the Magistrate Judge cited, in a footnote, that the ALJ was entitled to give Dr. Jones' opinion little weight because it was unsupported by objective clinical evidence and was inconsistent with other findings in the record, neither the ALJ nor the Magistrate Judge can point to anything in the record which is inconsistent with Dr. Jones' opinion."  *Id*. at 15–16.  As set forth above, however, objective medical evidence of five examining physicians' support the ALJ's decision.  The ALJ's determination that Plaintiff is not disabled and retains the residual functional capacity to perform "sedentary work" work is supported by "substantial evidence."  42 U.S.C. § 405(g).

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's objection to Judge Mazjoub's report and recommendation (ECF No. 20) is **OVERRULED**.

It is further **ORDERED** that the Judge Mazjoub's report and recommendation (ECF No. 17) is **ADOPTED**.

It is further **ORDERED** that Plaintiff's motion for summary judgment (ECF No. 13) is **DENIED**.

It is further **ORDERED** that Defendant's motion for summary judgment (ECF No. 16) is **GRANTED**.

It is further **ORDERED** that the findings of the Commissioner are **AFFIRMED** and Plaintiff's complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 23, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 23, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS

-16-